UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.  21cr10093 |
| v. | Violations: |
| RICHARD EVANS, | Count One: Conspiracy to Commit Theft Concerning Programs Receiving Federal Funds (18 U.S.C. § 371) |
| Defendant | |
| | Count Two: Theft Concerning Programs Receiving Federal Funds; Aiding and Abetting (18 U.S.C. §§ 666(a)(1)(A) and 2) |
| | Count Three: Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349) |
| | Counts Four - Six: Wire Fraud; Aiding and Abetting (18 U.S.C. §§ 1343 and 2) |
| | Forfeiture Allegation: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

The Boston Police Department

1.     The Boston Police Department ("BPD") was the police department for the City of Boston and the oldest police department in the United States.   It was the largest police department in New England and approximately the 20th largest department in the country.

1

2.      The BPD had the authority to enforce the criminal laws of the Commonwealth of Massachusetts and the local rules and ordinances of the City of Boston.

<u>The BPD Received Federal Benefits</u>

3.      For the calendar years 2015 through 2019, the BPD received annual benefits from the federal government in excess of $10,000.

4.      For example, the United States Department of Transportation ("DOT") is an agency of the United States that provides hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities to benefit the residents of the United States.   DOT provides funding to assist and enhance enforcement of traffic regulations on public roadways for the purpose of increasing public well-being and safety.

5.      For the calendar years 2015 through 2019, the BPD received annual benefits from the DOT in excess of $10,000.   DOT provided these funds through numerous federal grants.

6.      The United States Department of Justice ("DOJ") is an agency of the United States that provided hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities to benefit the residents of the United States.

7.      For the calendar years 2015 through 2019, the BPD received annual benefits from the DOJ in excess of $10,000.   DOJ provided these funds through numerous federal grants.

<u>BPD Evidence Warehouse</u>

8.      The BPD leases two buildings located at 1555 Hyde Park Avenue which serve as the BPD Evidence Warehouse (the "Warehouse").   The Warehouse was used, among other things, to store seized evidence.

9.      Officers of the Boston Police Evidence Control Unit ("ECU") were assigned to

2

the Warehouse and were primarily responsible for, among other things, storing, cataloging, and retrieving the evidence at the Warehouse so it could be used in court proceedings and as otherwise needed by the BPD.

<u>The Defendant</u>

10.     From at least March 2015 to at least April 2016, Richard Evans was a Captain in the BPD assigned to the ECU and was in command of the Warehouse.   Evans supervised the officers of the ECU assigned to the warehouse.

11.     Evans earned approximately $196,803 in taxable income from the City of Boston in 2016.

<u>Overtime</u>

12.     In addition to their salary for a regular 8-hour work shift, Monday through Friday from 7:30 a.m. to 4:00 p.m., officers of the ECU were able to earn overtime pay equivalent to 1.5 times their regular hourly pay rate for various overtime assignments.

13.     In order to be paid for overtime, officers of the ECU were required to fill out an overtime slip.   The overtime slip contains entries for, among other things, the officer's name and identifying information, the type of overtime being performed, the location where the overtime was being performed, the date of the overtime, and the hours of the overtime shift.   In addition, each overtime slip required the officers to specifically write the number of "**<u>Actual Hours Worked</u>**."   The entry for "actual hours worked" is both bolded and underlined on the overtime slip.   Officers had a duty to honestly fill out each overtime slip and were required to sign the form.

14.     In order for the officers of the ECU to be paid for overtime, the officer's

3

supervisors were required to sign each overtime slip certifying that the overtime was authorized and that the officer actually worked the hours that the officer claimed to have worked.

15.     Supervisors had a duty to certify only those hours actually worked by their subordinates.

16.     As the Commander of the ECU, Evans' overtime slips were submitted to the Bureau Chief of Administration and Technology, who did not work at the Warehouse.

17.     The Bureau Chief relied upon Evans to accurately report the hours worked by both Evans and Evans' subordinates at the Warehouse.

### "Purge" Overtime

18.     Beginning by at least March 2015, and continuing through at least February 2019, officers of the ECU could earn overtime pay for a 4-8 p.m. overtime shift most commonly referred to as "purge" overtime.   The primary purpose of this overtime shift was to control and reduce the inventory of the Warehouse.   At various times, the 4-8 p.m. overtime shift also included efforts to scan and catalog the inventory of the Warehouse and dispose of seized narcotics.

19.     This 4-8 p.m. "purge" overtime shift frequently involved four or more officers of the ECU – at least one supervisor and often three or more officers – who all worked together inside the Warehouse.

20.     The "purge" overtime shifts were "hour for hour" overtime, which meant that the overtime was earned in fifteen minute increments.   To properly earn four hours of overtime for the four hour "purge" overtime shift, officers of the ECU were required to work a minimum of three hours and forty-six minutes.

<u>The Warehouse Alarm</u>

21.     The Warehouse was extensively alarmed.    The alarm system was maintained by the Boston Municipal Protective Services Department, which provided security for almost all buildings owned and controlled by the City of Boston (*i.e.*, Police Stations, Fire Stations, City Hall, Schools, Libraries, etc.).

22.     Once the Warehouse's perimeter alarm was set, no one could remain in the building without triggering the alarm.

23.     Data from the alarm system, including when it was set and disarmed on a given date, was maintained on servers by the Boston Municipal Protective Services Department.

24.     From at least March 2015 through February 2019, on dates that the members of the ECU claimed to be performing "purge" overtime from 4-8 p.m., the alarm records frequently showed that the building was closed, locked, and alarmed by 6 p.m. or before.

<u>Interstate Wires</u>

25.     Citizens Bank is a bank headquartered in Providence, Rhode Island, which operates in the Commonwealth of Massachusetts, among other states.

26.     Citizens Bank processed all BPD electronic funds transfers and direct deposits for BPD employees' salaries and overtime pay.

27.     In order to initiate the payment of BPD payroll, BPD transfers to the City of Boston a file containing the information about its employees and their hours worked.    The City of Boston, which controls the salary rates, then electronically transfers a file to Citizens Bank, in Providence, Rhode Island, containing information about the bank and amount of money to be transferred to each employee for the work performed.

28.     After the files are processed, deposits are made, from Citizens Bank in Rhode Island, to the accounts of the BPD employees in the amounts designated by BPD.

29.     Evans was paid his salary and overtime pay via direct deposit to his account at Bank of America in the Commonwealth of Massachusetts.

<u>Overview of the Embezzlement and Wire Fraud Conspiracies</u>

30.     From at least March 2015 through in or about February 2019, the defendant and co-conspirators known and unknown to the Grand Jury engaged in a conspiracy to embezzle federal funds and a conspiracy to commit wire fraud by submitting false and fraudulent overtime slips in which they claimed to have worked a full "purge" overtime shift when in fact they did not.

31.     As a supervisor, Evans routinely endorsed overtime slips for subordinates certifying that subordinates had worked a full four hour shift when he knew that they had not done so.

32.     In 2015, Evans submitted and endorsed false and fraudulent overtime slips in which he and members of the ECU claimed to have worked a full four hour "purge" shift on the following dates, despite the fact that the Warehouse perimeter alarm was set well before the end of the shift (all dates and times approximate):

| Date | Warehouse Perimeter Alarm Set | ECU Members (Co-conspirators) Submitting Overtime Slips Claiming to have Actually Worked 4 hours OT in the Warehouse from 4:00 p.m. to 8:00 p.m. |
|---|---|---|
| 3/2/15 | 7:07 p.m. | Capt. Evans, Boston Police Officer ("BPD PO") #2, BPD PO #4, BPD PO #6, BPD PO #7, BPD PO #8 |
| 5/27/15 | 6:45 p.m. | Capt. Evans, BPD PO #2, BPD PO #3, BPD PO #4, BPD PO #7, BPD PO #9 |
| 6/11/15 | 5:27 p.m. | Capt. Evans, BPD PO #1, BPD PO #3, BPD PO #4, BPD PO #7, BPD PO #9 |
| 7/14/15 | 6:18 p.m. | Capt. Evans, BPD PO #3, BPD PO #4, BPD PO #7, BPD PO #8, BPD PO #9 |
| 8/13/15 | 5:50 p.m. | Capt. Evans, BPD PO #2, BPD PO #3, BPD PO #4, BPD PO #6, BPD PO #7 |
| 8/24/15 | 6:01 p.m. | Capt. Evans, Boston Police Sergeant ("BPD SGT") # 1, BPD PO #2, BPD PO #8, BPD PO #4, BPD PO #3, BPD PO #9 |
| 9/28/15 | 5:29 p.m. | Capt. Evans, BPD PO #1, BPD PO #2, BPD PO #4, BPD PO #8, BPD PO #9 |
| 10/26/15 | 5:20 p.m. | Capt. Evans, BPD SGT # 1, BPD SGT # 2, BPD PO #1, BPD PO #2, BPD PO #3, BPD PO #4, BPD PO #8, BPD PO #9 |
| 11/10/15 | 4:49 p.m. | Capt. Evans, BPD PO #1, BPD PO #2, BPD PO #7, BPD PO #8, BPD PO #9 |
| 12/15/15 | 4:55 p.m. | Capt. Evans, BPD PO #1, BPD PO #2, BPD PO #3, BPD PO #7, BPD PO #9 |
| 12/24/15 | 4:52 p.m. | Capt. Evans, BPD PO #2, BPD PO #3, BPD PO #5, BPD PO #6, BPD PO #8, BPD PO #9 |

33.     In 2016, Evans submitted and endorsed false and fraudulent overtime slips claiming to have worked a full four hour "purge" shift on the following dates, despite the fact that the Warehouse perimeter alarm was set well before the end of the shift (all dates and times approximate):

| Date | Warehouse Perimeter Alarm Set | ECU Members Submitting Overtime Slips Claiming to have Actually Worked 4 Hours in the Warehouse from 4:00 p.m. - 8:00 p.m. |
|------|------|------|
| 1/11/16 | 5:31 p.m. | Capt. Evans, BPD SGT # 1, BPD PO #1, BPD PO #2, BPD PO #3, BPD PO #5 |
| 1/14/16 | 5:14 p.m. | Capt. Evans, BPD SGT # 1, BPD PO #1, BPD PO #2, BPD PO #3, BPD PO #5, BPD PO #6, BPD PO #7, BPD PO #8 |
| 2/1/16 | 5:33 p.m. | Capt. Evans, BPD PO #1, BPD PO #2, BPD PO #6, BPD PO #7, BPD PO #8 |
| 3/2/16 | 5:18 p.m. | Capt. Evans, BPD PO #1, BPD PO #2, BPD PO #5, BPD PO #7, BPD PO #8 |
| 3/17/16 | 5:16 p.m. | Capt. Evans, BPD PO #1, BPD PO #2, BPD PO #5, BPD PO #7, BPD PO #8, |
| 3/23/16 | 5:09 p.m. | Capt. Evans, BPD PO #1, BPD PO #2, BPD PO #3, BPD PO #5, BPD PO #8 |
| 3/31/16 | 5:39 p.m. | Capt. Evans, BPD PO #1, BPD PO #2, BPD PO #3, BPD PO #6, BPD PO #7 |

34.     From at least March 2015 through in or about April 2016, Evans personally received over approximately $12,395 for overtime hours that he did not work.

35.     From at least March 2015 through in or about April 2016, Evans endorsed dozens of fraudulent overtime slips of subordinate officers for overtime hours that they did not work.

36.     From March of 2015 through February of 2019, the participants in this conspiracy collected tens of thousands of dollars each year in fraudulent overtime.

<u>Object and Purpose of the Embezzlement and Wire Fraud Conspiracies</u>

37.     The object of the embezzlement conspiracy was for the defendant and others to

embezzle funds from BPD, an agency that received federal funding.   The object of the wire fraud conspiracy was for the defendants to commit wire fraud by submitting false and fraudulent overtime slips indicating that they had worked full overtime shifts when in fact they had not. The purpose of both conspiracies was for the defendants to enrich themselves personally by obtaining payment for overtime hours that they did not work.

<u>Manner and Means of the Embezzlement and Wire Fraud Conspiracies</u>

38.    Among the manner and means by which Evans and coconspirators known and unknown to the Grand Jury carried out the embezzlement and wire fraud conspiracies were the following:

a.   From at least March 2015 through in or about February 2019, the conspirators routinely left the Warehouse at least one, two, and sometimes more than three hours, before the end of the 4-8 p.m. overtime shift.

b.   From at least March 2015 through in or about February 2019, despite leaving early, the conspirators submitted false and fraudulent overtime slips claiming to have worked the full 4-8 p.m. overtime shift.

c.   From at least March 2015 through in or about February 2019, ECU supervisors, including Evans, submitted false and fraudulent overtime slips for overtime hours that they did not work.

d.   From at least March 2015 through in or about February 2019, ECU supervisors, including Evans, knowingly endorsed the false and fraudulent overtime slips of subordinates so that coconspirators would be paid for overtime hours that they did not work.

<u>Overt Acts in Furtherance of the Embezzlement Conspiracy and Acts in Furtherance of the Wire Fraud Conspiracy</u>

39.    From at least March 2015 through in or about March 31, 2016, Evans and co-conspirators known and unknown to the Grand Jury, committed and caused to be committed the following overt acts in furtherance of the embezzlement conspiracy and the following acts in furtherance of the wire fraud conspiracy, among others.

| | Approximate Date | Overt Acts and Acts in Furtherance |
|---|---|---|
| 1 | 3/2/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 2 | 5/27/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 3 | 6/11/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 4 | 7/14/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 5 | 8/13/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 6 | 8/24/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 7 | 9/28/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 8 | 10/26/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 9 | 11/10/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 10 | 12/15/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 11 | 12/24/15 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 12 | 1/11/16 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 13 | 1/14/16 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 14 | 2/1/16 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 15 | 3/2/16 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 16 | 3/17/16 | Evans submitted a false and fraudulent overtime slip claiming to |

| | | have worked 4 hours and endorsed fraudulent slips of subordinates |
|----|---------|-----------------------------------------------------------------------------------------------------------------------------------------------|
| 17 | 3/23/16 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 15 | 3/31/16 | Evans submitted a false and fraudulent overtime slip claiming to have worked 4 hours and endorsed fraudulent slips of subordinates |
| 16 | 7/27/17 | BPD SGT #3, BPD SGT #4, BPD PO #2,BPD PO #5, BPD PO #10, BPD PO #11, BPD PO #12 submitted false and fraudulent overtime slips claiming to have worked 4 hours |
| 17 | 10/1/18 | BPD LT. #1, BPD PO #2, BPD PO #11, BPD PO #13 submitted false and fraudulent overtime slips claiming to have worked 4 hours |
| 18 | 1/24/19 | BPD LT. #1, BPD SGT. #4, BPD PO #2, BPD PO #10, BPD PO#11, BPD PO #13, BPD PO #14 submitted false and fraudulent overtime slips claiming to have worked 4 hours |

<u>COUNT ONE</u>
Conspiracy to Commit Theft Concerning Programs Receiving Federal Funds
(18 U.S.C. § 371)

The Grand Jury charges:

40.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 39 of this Indictment.

41.     From at least March 2015 through in or about February 2019, in the District of Massachusetts, and elsewhere, the defendant,

RICHARD EVANS,

conspired with others known and unknown to the Grand Jury, to commit an offense against the United States, to wit: theft concerning programs receiving federal funds, that is, being an agent of an organization, namely, the Boston Police Department, to embezzle, steal, obtain by fraud and otherwise without authority knowingly convert to the use of a person other than the rightful owner and intentionally misapply, property valued at $5,000 or more, that was owned by, and was under the care, custody, and control of the Boston Police Department, which received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance or other form of Federal assistance in any one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(A).

All in violation of Title 18, United States Code, Section 371.

12

<u>COUNT TWO</u>
Theft Concerning Programs Receiving Federal Funds; Aiding and Abetting
(18 U.S.C. § 666(a)(1)(A); 18 U.S.C. § 2)

The Grand Jury further charges:

42.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 39 of this Indictment.

43.     From at least March 2015 through in or about April 2016, in the District of Massachusetts and elsewhere, the defendant,

RICHARD EVANS,

being an agent of an organization, the Boston Police Department, embezzled, stole, obtained by fraud and otherwise without authority knowingly converted to the use of a person other than the rightful owner and intentionally misapplied, property valued at $5,000 or more, that was owned by, and was under the care, custody, and control of the Boston Police Department, which received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance or other form of Federal assistance in any one-year period.

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

13

## COUNT THREE
Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

The Grand Jury charges:

44.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 39 of this Indictment.

45.     From at least March 2015 through in or about February 2019, in the District of Massachusetts, and elsewhere, the defendant,

RICHARD EVANS,

conspired others known and unknown to the Grand Jury to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

14

<u>COUNTS FOUR - SIX</u>
Wire Fraud; Aiding and Abetting
(18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

46.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 39 of this Indictment.

47.     From in or about March 2015 through in or about April 2016, in the District of Massachusetts, and elsewhere, the defendant,

RICHARD EVANS,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 4 | April 1, 2016 | A Citizens Bank (RI) BPD payroll direct deposit of appx. $2,557.87 to defendant's Bank of America (MA) account for overtime hours that were not worked |
| 5 | April 8, 2016 | A Citizens Bank (RI) BPD payroll direct deposit of appx. $2,348.16 to defendant's Bank of America (MA) account for overtime hours that were not worked |
| 6 | April 15, 2016 | A Citizens Bank (RI) BPD payroll direct deposit of appx. $2,145.32 to defendant's Bank of America (MA) account for overtime hours that were not worked |

All in violation of Title 18, United State Code, Sections 1343 and 2.

15

FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

48.     Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Sections 371, 666, 1343, and 1349, set forth in Counts One through Six, the

defendant,

RICHARD EVANS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C)

and Title 28, United States Code, Section 2461(c), any property, real or personal, which

constitutes, or is derived from, proceeds traceable to the offenses.

49.     If any of the property described in paragraph 1, above, as being forfeitable

pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 ,United States Code,

Section 2461(c), as a result of any act or omission of the defendants --

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred to, sold to, or deposited with a third party;

    c.     has been placed beyond the jurisdiction of this Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided
           without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other

property of the defendants up to the value of the property described in paragraph 1 above.

    All pursuant to Title 18, United States Code, Section 981 and Title 28, United States

Code, Section 2461(c).

16

A TRUE BILL

FOREPERSON OF THE GRAND JURY

Mark Grady
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS; March 29, 2021.

Returned into the District Court by the Grand Jurors
and filed.

/s/ Dawn M. King 3/19/21 4:03pm

DEPUTY CLERK

17