UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Criminal No.
21-CR-10093-RGS

UNITED STATES OF AMERICA

VS.

RICHARD EVANS

DEFENDANT'S SENTENCING MEMORANDUM

I.  Introduction and Background of Defendant

Now comes the defendant, Richard Evans, in the above captioned matter and respectfully submits his sentencing memorandum.

Richard Evans is an individual who is the epitome of the classic "every man" in our society. He is a gentleman whose background, history and life epitomize that of a successful, decent citizen contributing to our society. Mr. Evans' letter to the Court speaks eloquently in his own words about his life, being raised in Dorchester, Massachusetts and ultimately proceeding to Xaverian High School and Boston College.

His family is one of strong, blue collar, patriotic individuals. Mr. Evans, as the Court is aware, did not engage in military service but instead, upon graduation for college, entered into the police department where he served with distinction for over 42 years. During that 42 year period he did

1

not have any disciplinary issues and ultimately retired. He still, as noted, had 266 sick hours on the books that he never collected.

Mr. Evans' letter outlines in detail his assignments and promotions as well as his personal life as a husband to his wife, Dorothy, of 34 years, who is still employed by the police department as a head clerk for over 45 years. He is the father of two children, Russell and Garrett.

Of import to the Court, Mr. Evans' letter details the history of his employ in the Boston Police Department, ultimately culminating in his attaining the position of captain which, as the Court would recall from testimony presented at trial, was quite an accomplishment. He is presently 66 years of age. He has accepted responsibility in his observation that his conduct was an aberration and a decision that ultimately reaped terrible consequences to himself, his family and his police department.

## I.   A Probationary Sentence or Home Confinement is Appropriate under §3553(A)

When it comes time to sentencing, the court has a number of considerations to consider. The §3553 factors all militate in a defendant's favor. Mr. Evans is requesting that this court would consider home confinement as a sentence. The defendant also annexes a number of similar cases and the dispositions for whatever impact that may have on the court's decision, recognizing that every case is unique and different and stands on

2

its own merit.

In crafting an appropriate sentence, the court must consider the factors set forth in 18 U.S.C. §3553(a). The guiding principle in sentencing is that a sentence must be sufficient but not greater than necessary. 18 U.S.C. §3553 (a); <u>Kimbrough vs. United States,</u> 552 U.S. 85, 101 (2007). As such, the sentencing guidelines are "merely advisory, which means that the district court has considerable leeway to impose a sentence that falls outside the range suggested." <u>United States vs. Robinson</u>, 433 F.3d 31, 35 (1st Cir. 2005); see <u>United States vs. Booker</u>, 543 U.S. 220 (2005). Indeed, the guidelines are "generalizations that can point to outcomes that may appear unreasonable to sentencing judges." See <u>United States vs. Jimenez-Beltre</u>, 440 F.3d, 514, 518 (1st Cir. 2006). In light of potential conflicts between the guidelines and an appropriate sentence under the circumstances, courts are free to "impose non-guideline sentences that override guidelines, subject only to the ultimate requirement of reasonableness." <u>Id.</u>

## II. The Nature and Circumstance of the Offense

The nature and circumstance of the offense has been clearly delineated in the testimony presented at trial before this Court and a jury as well as the Presentence Report submitted by the Probation Department. The

defendant suggests that just punishment and deterrence would be obtained by a sentence of 3 years probation and supervised release.

Indeed, the First Circuit affirmed the district court in United States vs. Prosperi in "reject[ing] the view that the interest in general deterrence [can] only be served by incarceration." 686 F.3d 32, 48 (1st Cir. 2012). Judge Stearns' remark at the sentencing hearing in Prosperi apply forcefully to this case;

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called into account, as these men are, for the wrong that they committed.
> Id.

Mr. Evans notes that he is a defendant before the Court with literally no criminal history whatsoever. Other than the instant case Mr. Evans has not been involved in the criminal justice system in any capacity other than as a hard-working employee of the Boston Police Department. As the Court knows, Captain Evans started in the Evidence Control Unit in May of 2012 up through 2019. The government alleges that the conspiracy and the evidence presented at trial shows that the conspiracy started in 2011, well before Captain Evans' position as a supervisor in the ECU.

4

The whole concept of the four hour minimum overtime plan started with Captain Dowd, a fact which is clearly evidenced by the testimony presented and most likely conceded by the government. Captain Dowd ultimately left the ECU as well as Dahill who left in 2014. Purge programs began in 2011 and the defendant's position was from May of 2012 through March of 2016.

The defendant has objected to the calculations in the Presentence Report wherein they place theft and fraud by Evans and his co-conspirators exceeding $420,000.00. The defendant has noted that this is a significant over calculation of his money derived, noting that there were 7 supervisors over the course of a significant period of time. There were no emails or text messages whatsoever from Evans to any individual nor was there any testimony of any meetings, conspiracy discussions, orders, directives or commentary by Evans to the employees. In fact, the evidence presented that Evans would stay in his own office and rarely socialized or was involved with the rank and file involved with the purged program.

Testimony was presented to the Court that police officers working in the ECU did not believe subjectively that there was criminal activity. Nevertheless, it is readily apparent there was a violation of the requirement

of truthfulness in the submission of the vouchers which has been readily acknowledged.

The defendant is alleged to have submitted slips for 1286 hours of overtime, collecting over $108,000.00 from purge, suggesting there is a gain of $17,390.00. The Presentence Report notes that the allegations of theft loss exceeded $150,000.00 (paragraph 62) has resulted in a 10 point increase. Captain Evans suggests that it is apparent that during the time frames that he had four weeks vacation a year which he would always take in the summer as noted in the objections to the PSR. Captain Evans suggests that it is inappropriate to have a 10 point increase for $17,390.00 in the amount of money calculating as received by him. Clearly, the PSR overstates the appropriate calculations as well as the nature of the offense and the defendant has objected to the 10 point increase.

In any event, the defendant, consistent with the §3553 factors the defendant is also requesting that the Court consider that he has a Criminal History resulting in 0 points and under §4C1.1 of the criminal history amendment to the 2023 sentencing guidelines the defendant should receive a 2 point reduction in the calculation of the recommended sentence.

The defendant suggests that, as indicted above, he entered into the ECU as a supervising captain but the evidence does not justify an adjustment

6

of the offense to suggest that he was a manager or supervision of criminal activity involving five or more participants under 3B1.1b. Upon removal of the special offense characteristic under 2B1.1b (1C) as well as the adjustment for the role in the offense pursuant to 3B1.1b and application of 4C1.1, the defendant would be at an adjusted Base Offense Level with a criminal history of 1 placing him in Zone A where the Court would be justified should it deem appropriate to sentence him to a term of home confinement with supervision.

In further support thereof the defendant attaches a number of character letters that have been written on his behalf to the Court commenting on various aspects of Richard Evans' life and factors that should be considered by the Court as it relates to sentencing. The defendant notes that there were many people that contacted counsel and provided the letters that have been received and it is readily apparent that he garners significant support from his community and family. The defendant's letter to this Court is also attached consisting of ten pages for the Court's review.

Wherefore the defendant, Richard Evans, respectfully seeks a sentence of home confinement within the Court's discretion to be followed by supervised release and any further orders the Court feels would be appropriate as it relates to restitution or any other loss.

By his attorney

/s/Kevin J. Reddington, Esq.

**CERTIFICATE OF SERVICE**

I, Kevin J. Reddington, Esq., Attorney for the Defendant, Richard Evans, hereby certify that the following documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 18, 2024.

DEFENDANT'S SENTENCING MEMORANDUM

/s/Kevin J. Reddington, Esq.

ADDENDUM
List of Dispositions of Other Police Officers Involved with Conspiracy to Commit Theft/Embezzlement of Government Funds

**Sgt. Finch**-3 years probation, six months home confinement, $11,310.00 restitution. It should be noted that Sgt. Finch was a sergeant with Captain Evans' group for approximately 1½ years and he retired in December of 2016.

**Thomas Nee**-sentenced to two years of supervised release, a fine of $2000.00, restitution of $16,151.00. Officer Nee left the unit in 2018 into the Torrigian Group and was there until approximately January of 2015.

**Craig Smalls**-2 years probation, $16,000.00 fine, $16,252.00 in restitution. He worked with Captain Evans.

Joseph Nee-2 years probation, $2000.00 fine, $4,223.00 restitution. The Court may recall that Joseph Nee testified that he was the individual who stole the evidence money.

**Sgt. William Baxter**-3 years supervised release, 7 months home confinement, $20,000.00 fine, $9,223.00 restitution. Sgt. Baxter was a sergeant in Captain Evans' group for approximately one year.

**Michael Murphy**-2 years supervised release, $5500.00 fine, $16,014.00 restitution.

**Diana Lopez**-6 months in prison subsequent to a hearing. 2 years of supervised release, $5000.00 fine, $36,028.00 restitution. She worked in the warehouse from January of 2015 through February of 2019.

**James Carnes**-2 years supervised release, 6 months home detention, $5000.00 fine, $20,106.00 restitution.

**Sgt. Gerald O'Brien**-2 years supervised release, six months home detention, $5000.00 fine, $25,930 restitution.

**Trooper Paul Cesan**-1 day in prison served, 1 year supervised release, $5500.00 fine, $29,287 restitution.

**Trooper Gary Herman**-1 day in prison, 1 year supervised release, three months home confinement, $12,468 restitution.

**Lt. David Wilson**-1 day in prison deemed served, 2 years supervised release, 6 months home confinement, $12,450.00 restitution.

**Trooper Heath McAuliffe**-1 day in prison deemed served, 1 year supervised release, 6 months home confinement, $4000.00 fine.

9